August Charles **GIVENS**, Petitioner,

v.

Vernon G. **HOUSEWRIGHT**, and the Attorney General of the State of Nevada, Respondents.

No. CV–R–83–276–ECR.

United States District Court, D. Nevada.

June 20, 1985.

Augusta C. Givens, in pro per.

N. Patrick Flanagan, III, Asst. Fed. Public Defender, Reno, Nev., for petitioner.

D. Brian McKay, Atty. Gen., David F. Sarnowski, Deputy Atty. Gen., Carson City, Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., District Judge.

Pursuant to Order of the Ninth Circuit Court of Appeals, this Court has considered whether petitioner's explanation of tardiness contained in his notice of appeal (from the order of this Court dismissing his petition for writ of habeas corpus), construed as a motion for extension of time, should be granted. An evidentiary hearing was held before this Court on April 22, 1985. Arguments of counsel and legal authority were also presented to the Court.

Petitioner was represented at the hearing by N. Patrick Flanagan, Assistant Federal Public Defender, and the respondents were represented by David F. Sarnowski, Deputy Attorney General of the State of Nevada.

On June 14, 1984, the Order of this Court was entered dismissing petitioner's petition for writ of habeas corpus under Title 28 U.S.C. § 2254. The Court's Order was signed on June 7, 1984, but not entered by the Clerk until June 14, 1984. The regular practice of the Clerk's office of this Court is to mail orders of this sort to all parties on the day they are entered by the Clerk. On occasion, mailing by the Clerk is delayed a day.

The Order entered June 14, 1984, was not received at the mail room of the prison, Northern Nevada Correctional Center (NNCC), where petitioner is incarcerated, until June 26, 1984. There is a regular practice at the prison of logging in legal mail and that log reflects the receipt of the Order at the mail room on June 26, 1984. On June 27, 1984, the Order was physically delivered to petitioner at the prison "Control Room." This was in accordance with the regular procedures of the prison which require that, prior to delivery of legal mail to an inmate, a receipt for delivery of the mail be signed by the inmate and that the item in question be opened in front of the inmate to see if it contains any contraband.

It was not until July 18, 1984, that the notice of appeal was received and filed by the Clerk of this Court. The notice of appeal calls attention to the fact that the Order appealed from was signed on June 7, 1984, but not entered by the Clerk until June 14 and alleges that it was received by

the petitioner on June 27. The notice states as excuses for late filing that

(a) petitioner is a layman and has no knowledge pertaining to the law;

(b) petitioner had to find someone on the prison yard to prepare the notice;

(c) petitioner could not get necessary legal supplies from the law library at the Northern Nevada Correctional Center to prepare the notice.

Petitioner testified at the evidentiary hearing that he knew of the 30-day time limit but believed that it ran from the date the order was received, rather than from the date it was entered.

The original habeas petition was drafted by Farrell Clements, at that time an inmate law clerk at the law library of NNCC. By the time the order denying habeas was received by petitioner, Mr. Clements had been assigned to a different prison job and was no longer acting as a law clerk. He was unable to assist petitioner with the appeal. It was necessary without delay for petitioner to obtain help with the appeal from someone else. So Mr. Clements introduced petitioner to John C. Smith, an inmate on the yard at NNCC (not assigned as an inmate law clerk at the law library), and recommended Mr. Smith as a reliable person to help petitioner with the appeal. The Order of this Court entered June 14, 1984, was delivered by petitioner to Mr. Smith who agreed to assist petitioner. There is no evidence in this record that Mr. Smith had any legal training or experience, but apparently his work had gained the confidence of Mr. Clements. Petitioner believed Mr. Clements was a qualified inmate law clerk and, therefore, had reason to rely upon his recommendation of Mr. Smith.

After the time Mr. Smith was to begin to undertake the work to assist with the appeal, petitioner checked with him two times a week to see if he was taking the steps necessary to perfect the appeal. Mr. Smith not only drafted the form of notice of appeal and the wording of the excuse for late filing contained in it, but also personally provided the paper for the preparation of the notice and typed it as well.

After the notice of appeal was prepared by Mr. Smith, petitioner reviewed it and signed it. It was then mailed. One would have to conclude, based upon the testimony received, that the notice was promptly mailed after its preparation was completed.

When petitioner checked with Mr. Smith about his progress in preparing the notice of appeal, Mr. Smith told him that an extension of time might be needed due to what he described as a "foul-up" in the Clerk's office. This comment might be taken to refer to the length of time between the time the Order was entered and was received at the prison. This comment by Mr. Smith and the fact that the notice itself contained an excuse for late filing, indicate that petitioner realized that the notice of appeal was being filed late.

According to the Order of the Circuit, this Court's consideration of the reasons for the late filing is limited to those contained in the notice of appeal.

The preponderance of the evidence in this record would indicate doubt as to the qualifications of at least some of the inmate law clerks at the NNCC law library to effectively assist petitioner in preparing and filing the notice of appeal. This finding is based on the limited record in this case. There do not appear to be any particular qualifications required by the prison authorities for assignment of law clerks. It is at least hoped that they are articulate, intelligent and can type. The only training which they receive is from the other inmate law clerks. There is no indication that petitioner would necessarily be able to tell which law clerks were qualified and which not. Petitioner has been fairly constantly a member of the Inmate Advisory Committee at NNCC which, as mentioned below, handles inmate grievances. In that capacity petitioner received information which was a basis for his conclusion that some of the law clerks in the library were unqualified. Since he had Mr. Clements' recommendation, petitioner's best bet was to seek help on the yard. In the circumstances, the Court concludes that, as alleged in

the notice of appeal, petitioner did have to find someone (an inmate) on the prison yard to prepare the notice. Petitioner had reason to believe Mr. Smith would properly prepare and timely file the notice of appeal. If Mr. Smith failed to do that, petitioner could be guilty of no more than excusable neglect on account of his reliance on Mr. Smith and Mr. Smith's failure to get the job done.

Petitioner alleges as a further excuse for late filing that he could not get the necessary legal supplies from the law library at NNCC to prepare the notice. This statement was made on the basis of petitioner's previous knowledge of and experience with the library. He believed the library did not have the legal supplies which would be needed in connection with filing of the notice of appeal. Petitioner did not actually check with the library to see if it had the necessary supplies. On a fairly continuous basis, he has been a member of the Inmate Advisory Committee at NNCC. That committee is elected on an annual basis by the inmates and deals mostly with inmate grievances. As a member of the committee petitioner was in a position to know about the availability of the legal supplies at the law library. There had been grievances concerning the availability at the library of legal supplies for use of inmates.

However, it appears that Mr. Smith had the required legal supplies for the appeal and was willing as a favor to make them available for petitioner and did so. Such supplies have been provided by Mr. Smith's wife for his use in assisting inmates. This has been done on a gratis basis without reimbursement from inmates, such as petitioner, or the prison authorities. Inability to obtain legal supplies from the law library (even though it appears they may not have been available had they been requested) is not a valid reason for the late filing of the notice of appeal, because the supplies were available through Mr. Smith.

It is the view of this Court that it can and should consider the conditions under which inmates, such as John C. Smith, perform legal work for other inmates. The restrictive circumstances under which such inmates assisting other inmates must work have to be acknowledged, as well as the limited nature of the legal knowledge, experience and ability of the inmates who seek to assist other inmates with their cases.

Rule 4(a)(1) of the Federal Rules of Appellate Procedure requires that the notice of appeal be filed with the Clerk of the District Court within 30 days after the date of entry of the order appealed from. Rule 4(a)(5) provides that upon a showing of excusable neglect or good cause the District Court may extend the time for filing the notice of appeal upon a motion filed not later than 30 days after expiration of the 30-day period within which notices of appeal are required to be filed. Here, the motion for extension of time was filed within the 30-day period after the original 30-day period had expired and, therefore, petitioner is entitled to an extension of time if he can make the appropriate showing, as delineated below.

The time periods in the appellate rules must be taken to anticipate that an appellant will receive the order to be appealed from fairly promptly after it is entered, so that the appellant will have the 30-day period, minus a reasonable period of time for mail delivery, within which to file the notice of appeal. It should be noted that the evidence in this case indicates that it takes up to four days for mail delivery between NNCC and the Clerk's office in Reno (a distance of approximately 30 miles).

The notice of appeal was mailed by petitioner to the Clerk within 17 days after the order was received by petitioner. Further, petitioner in filing of his notice included an appropriate motion for an extension of time to file the notice of appeal.

 At the time of the hearing the parties stipulated that the test which this Court should apply in deciding if the motion for extension of time to file the notice of appeal should be granted was "excusable neglect." This appears to be the correct standard to be used where, as in this case, the motion for extension of time was

filed after the expiration of the 30-day period provided for in Rule 4(a)(1). While the literal wording of the rule would indicate that the motion might be granted for either excusable neglect or good cause, the use of the words "good cause" was intended by the draftsmen of the rule to apply only to applications made before the thirty-day period provided in Rule `4(a)(1) had expired. The good cause language was added to the rule by a 1979 amendment because the excusable neglect standard never fit exactly the situation in which an appellant seeks an extension before the expiration of the initial appeal period. *State of Oregon v. Champion International Corp.*, 680 F.2d 1300, 1301 (9th Cir.1982) (per curiam). *See* Fed.R.App.P. 4(a)(5) advisory committee note; *Chipperfield v. Posi-Seal International, et al.*, 550 F.Supp. 1322, 1323 (D.R. I.1982).

As indicated above, what is here deemed to be the motion for extension of time was filed within 30 days after the expiration of the original 30-day appeal period. Hence, the motion itself was filed within the time period required by F.R.A.P. 4(a)(5).

■ The question at issue is whether the excuses given for late filing in the notice of appeal constitute excusable neglect. The limitations of time within which a notice of appeal must be filed are mandatory and jurisdictional. *Rodgers v. Watt*, 722 F.2d 456 (9th Cir., *en banc*, 1983). However, upon a showing of excusable neglect the time for the filing of the notice of appeal may be extended by the district court for a period of up to 30 days after expiration of the original 30-day appeal period, or 10 days from the date of entry of the order granting the motion, whichever is later.

What constitutes excusable neglect in the Ninth Circuit is not completely clear. The *en banc* decision in *Rodgers* seems, however, to be the best reference. It states a possibly more lenient test than has been announced in some other Ninth Circuit cases. The standard indicated in *Rodgers* is a lack of notice plus additional equitable factors such as a showing of due diligence to ascertain whether the order

has been entered or sufficient reasons for lack of diligence.

■ In the case at bar there was a lack of notice for 13 days between the time when the Clerk entered the order and presumably mailed it to petitioner at the prison and its receipt by him. As discussed above, litigating from within the prison is to say the least difficult because of restrictions placed on prisoners. If it is intended that attorneys, who are in no way confined or restricted in their ability to consider, prepare and file notices of appeal, and who are educated in the law, unlike the inmates in our case are entitled to the 30-day period, certainly prisoners ought to be allowed at least an equal time period. In this case petitioner, an inmate, was not. Where the period of time an inmate has to file a notice of appeal is shortened to the extent it was here excusable neglect may be more easily inferred from the circumstances which occurred in this case.

Equitable factors favoring petitioner are also present in support of his motion. He mistakenly believed that he had 30 days after the order was received by him to file the notice.

Petitioner has only a high school education and, aside from the criminal proceedings which are the subject of his petition for writ of habeas corpus, he has had no contact with legal matters. As stated in the notice of appeal, he is a layman and has no knowledge pertaining to the law. He did the best he could and was at most guilty of excusable neglect. Also, as stated in the notice of appeal, it was necessary for petitioner to turn to another inmate in the yard to help him with the appeal. He sought such assistance with reasonable promptness.

Once the Order was delivered to John C. Smith, so that he might assist in preparation of the notice of appeal, petitioner pressed Mr. Smith to complete the work. Petitioner testified that he urgently contacted Mr. Smith twice a week about his progress in perfecting the appeal. These

efforts on the part of petitioner demonstrate diligence.

While the test of excusable neglect of *Rodgers* is somewhat difficult to apply to this case, nonetheless the test is met.

The case of *Oregon v. Champion, supra* states an earlier panel's definition of excusable neglect, limiting excusable neglect to extraordinary cases where injustice would otherwise result. The *Champion* test seems to be somewhat more difficult to meet than the test of *Rodgers*. It rules out mere mistake, inadvertence, oversight or neglect. The "extraordinary cases" test is not very precise but we should attempt to see whether that test is met in the case at bar. Here the unexplained period of approximately 13 days between the time the Clerk entered the order and its receipt by petitioner does seem to be extraordinary, notwithstanding perhaps delays experienced generally in mail deliveries. The evidence in this case indicates that mail was usually delivered within the 4-day period mentioned above. The 13-day period can be described as extraordinary. It also appears that an injustice would result if the motion is not granted, not in the sense that this Court believes its previous order dismissing the habeas petition is incorrect (which it does not), but rather in the sense that petitioner would be deprived of the opportunity to have the case reviewed by the appellate court. In its Certificate of Probable Cause for Appeal, this Court has previously found that the appeal does present substantial legal questions entitling review by the appellate court. The facts at bar do meet the excusable neglect test of *Champion*.

Whether the test of *Champion* is still viable in view of *Rodgers* is a question. At least one Ninth Circuit panel subsequent to *Rodgers* cited *Champion* and the *Champion* test for excusable neglect rather than the test of *Rodgers*. *See, e.g. Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464 (9th Cir.1984) (excusable neglect is sustainable only if there are extraordinary circumstances that prevent timely filing and denying the appeal would result in injustice; in *Islamic Republic* the fact that the only attorney able to represent appellant and that attorney's secretary both were seriously ill was held to constitute excusable neglect). On the other hand, the Arizona Supreme Court has, at least in spirit, followed the *Rodgers* test in *Davis v. Davis*, 143 Ariz. 54, 691 P.2d 1082 (1984) (*en banc*).

The foregoing shall constitute this Court's findings of fact and conclusions of law.

IT IS, THEREFORE, HEREBY ORDERED that the motion for extension of time to file the notice of appeal, as contained in the notice of appeal previously filed, is GRANTED.